# *C.E.R., Inc.*
**General Contractors**



Contract Number: 362-1219
Date: December 5, 2002

# Subcontract Agreement

This Subcontract (the "Subcontract"), made this **5th** day of **December, 2002** by and between C.E.R., Inc., a Maryland corporation, with its principal offices located at 1520 Caton Center Drive, Suite A, P.O. Box 24228, Baltimore, Maryland 21227 ("Contractor") and **Martin J. Braun Company a Maryland** corporation, with principal offices located at **3200 Annetta Avenue, Baltimore, Maryland 21213** ("Subcontractor").

WITNESSETH, that in consideration of their mutual entry into this Subcontract and other good and valuable consideration, receipt of which is hereby acknowledged, Contractor and Subcontractor hereby agrees as follows:

ARTICLE 1. Definitions. As used in this Subcontract, the following terms have the following meanings.

1.1. "Project" means a construction project known as **Repipe Hot and Cold Waterlines Building 222, Contract No. N62477-99-D-0105, Delivery Order No. 0012** located at **Naval Research Lab**, in **Washington, DC**.

1.2. "Plans and Specifications" means the plans, specifications, general conditions, and special conditions for the Project, entitled **Repipe Hot and Cold Waterlines Building 222 at the Naval Research Lab, Washington, DC** dated **August 8, 2002** and prepared by **Department of the Navy**, including any modifications issued prior or subsequent to the execution of the general contract between the Owner and Contractor, whether before or after the execution of this Subcontract.

1.3. "Owner" means **Department of the Navy**, the owner of the land and improvements comprising the Project, for whom Contractor is the general contractor for the Project.

1.4. "Architect" or "Engineer" means **Department of the Navy**, the architect or engineer directing the work as agent of the Owner.

1.5. Where the term "contractor" is used in the Plans and Specifications insofar as it has application to the work required to be done by Subcontractor as provided herein, it shall be deemed for purposes hereof to refer to Subcontractor.

1.6. The term "Contractor" or "General Contractor", when used in the general contract documents between Owner and Contractor, shall be deemed to have reference to the Subcontractor insofar as it has application to the work covered by this Subcontract.

1.7. The "Contract Documents" for this Subcontract consist of this Subcontract and any Exhibits attached hereto, the agreement between the Owner and Contractor dated as of **September 30, 2002** (the "General Contract"), the conditions of the General Contract (General, Supplementary and other Conditions), the Plans and Specifications, any documents enumerated therein, and all addenda issued prior to and all modifications issued after execution of this Subcontract. These Contract Documents form the Subcontract, and are as fully a part of this Subcontract as if attached to this Subcontract and incorporated herein by reference. Subcontractor has been furnished a copy of, or the has been provided access to, the Contract Documents current as of the date of this Subcontract.

1.8. The "Subcontract Sum" shall mean the sum or sums specified in Paragraph 15 hereof.

1.9. The "Work" shall mean the provision of labor and materials by Subcontractor, as specified in Article 3 hereof, of all work described in forth in Paragraph 14 hereof, all in accordance with the Contract Documents.

ARTICLE 2. Responsibilities of Subcontractor.

2.1 Subcontractor shall be bound to Contractor by the terms of this Subcontract and, to the extent that provision of the Contract Documents apply to the Work, Subcontractor shall assume toward the Contractor all the obligations and responsibilities which Contractor, by the Contract Documents, assumes toward the Owner and Architect, provided that where any provision of the Contract Documents between Owner or Contractor is inconsistent with any provision of this Subcontract, this Subcontract shall govern.

ARTICLE 3. Provision of Labor and Materials.

3.1. Subcontractor shall furnish and pay for all labor and supervision, tools, apparatus, supplies, hoists, mixers, scaffolding, utilities, equipment and services, and shall furnish, deliver, install and pay for all materials necessary for the complete performance of the Work, free from all claims of materialmen, suppliers, laborers, truckers, equipment lessors, subcontractors and others making claims through Subcontractor. If Subcontractor shall desire to use contractor's hoist, mixer, scaffolding, or any other equipment, gas, electricity, water or tools, it may do so only upon the prior written consent of Contractor and on such terms and at such cost to Subcontractor as Contractor shall designate.

05 2221

FILED
NOV 14 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**EXHIBIT A**

INITIAL ACCEPTANCE OF PAGE 1 OF 9: CONTRACTOR _____ SUBCONTRACTOR _____

3.2. The Work shall be done in a neat, skillful and workmanlike manner, in strict accordance with the Contract Documents, in full compliance with all requirements of applicable building codes and other laws and to the satisfaction of Owner, Architect, and/or Engineer, and Contractor. Any conflicts shall be brought to the attention of Contractor and resolved as it shall direct in writing. All materials furnished shall be new unless otherwise specified, and of good quality, free from faults and defects and in strict conformity with the Specifications. All Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The requirements of this paragraph shall be in addition to and not a limitation of any other right or remedy required by law or by the Contract Documents. Subcontractor shall also do, furnish and install all things customarily incidental to performing the Work in a complete and thorough manner, even if not called for in the Plans and Specifications or mentioned in this Subcontract (including any and all small items not usually mentioned in detail, but which are manifestly a part of the Work as completed) at no additional cost to the Contractor.

### ARTICLE 4. Diligent Performance.

4.1. Completion of the Work within the time allotted or reasonably contemplated under the Contract Documents is of the essence to this Subcontract. Subcontractor shall keep appraised of the progress of the Project and the Work shall be commenced, and prosecuted diligently, upon four (4) days notice from Contractor, and subject to authorized adjustments, shall be complete in accordance with Contractor's progress schedule as may be modified from time to time. Subcontractor shall cooperate with, and shall not delay, impede, or otherwise impair, the work of Contractor or others participating in the construction of the Project. Any written dates for performance of the Work, or any portion thereof such as the delivery of materials, samples, shop drawings, etc., that Contractor furnishes to Subcontractor, incorporates into a submittal schedule, or incorporates into the Contractor's progress schedule, shall become a part of this Subcontract. Subcontractor's failure to perform its Work in conformance with any such dates or schedules shall constitute a material breach of this Subcontract and event of default under Article 8.

4.2. Contractor reserves the right to modify its progress schedule with respect to the required sequence or duration of the Work or any portion thereof, and Contractor makes no representation that Subcontractor shall be entitled to commence, prosecute or complete the Work in accordance with any progress schedule. Subcontractor shall not be entitled to additional compensation for compliance with schedule revisions, except to the extent that the Contract Documents entitle the Contractor to additional compensation and such reimbursement is in fact obtained from the Owner. Subcontractor shall immediately notify Contractor in writing of any interruption of the Work or of any event or circumstance, which causes or may cause a delay in Subcontractor's performance.

4.3. If Subcontractor believes that it is entitled to additional time, it shall, within two (2) days after the commencement of the delay, notify Contractor in writing requesting additional time, and Contractor shall allow Subcontractor such additional time for completion of the Work as Contractor, shall deem reasonable. If Subcontractor shall disagree with Contractor's decision and shall so notify Contractor in writing setting forth its reason, the matter shall be resolved by Owner or Owner's authorized representative whose decision shall be final.

4.4. Contractor shall not be liable to the Subcontractor for any damage or additional compensation as a consequence of delays, including but not limited to unabsorbed or under-absorbed overhead, extended field and home office overhead, and labor and material escalation, caused by any person unless, as a condition precedent, the Contractor has first recovered same from the party responsible for the delays. Subcontractor understands and agrees that apart from any recovery from the delaying party, the Subcontractor's sole and exclusive remedy for delay shall be an extension in the time for performance of the Subcontractor's Work.

4.5. The parties acknowledge that Contractor will suffer financial damage if the Work is not timely completed, subject to extension as provided in Paragraph 4.3 hereof. Subcontractor shall be responsible for any and all damages incurred by Contractor as a result of unexcused delays of Subcontractor in completing the Work including, but not limited to, any liquidated damages or actual damages incurred by the Owner, the Contractor or any other subcontractor to whom Contractor is liable.

4.6. To avoid delay and/or interference with the performance of the Work of the Contractor and/or other subcontractors, Subcontractor shall: (i) cooperate with the Contractor and all others whose work may interfere with the Subcontractor's Work; (ii) attend all regularly and specially scheduled project meetings for coordination and scheduling of the Work; (iii) specifically note and immediately advise the Contractor of any such interference with the Subcontractor's Work; and; (iv) participate in the preparation of coordination drawings and work schedules in areas of congestion.

4.7. Subcontractor shall not deal directly with representatives of Owner, but shall handle all matters connected with this Subcontract, the performance of the Work, or the furnishing of materials or payment therefore, exclusively through Contractor, unless otherwise directed in writing by Contractor.

### ARTICLE 5. Progress Payments

5.1. Within ten (10) days of execution of this Subcontract, and prior to the submission of its first requisition for payment, Subcontractor shall submit to Contractor a schedule of values or cost loaded schedule that allocates the entire Subcontract Sum among the various portions of the Subcontractor's Work. Once approved, the schedule of values or cost loaded schedule shall be used as a basis for reviewing the Subcontractor's applications for payment.

5.2. Payment of the Subcontract Sum, any additional sums for changes, additions, or extras, as provided for herein, shall be made as follows: Contractor shall, subject to the provisions of Paragraph 5.3 hereof, pay to Subcontractor an amount equal to of the value of the Work performed by Subcontractor as determined by Owner or Owner's authorized representative and approved by Contractor during any monthly period specified by Contractor, within fifteen (15) days after payment thereof has been received by Contractor from Owner. Contractor shall be under no obligation to make any payment to Subcontractor except to the extent that Contractor has received funds from Owner for the Work invoiced by Subcontractor, such payment from Owner being a condition precedent to any payment obligation of Contractor to Subcontractor. Subcontractor expressly assumes the risk of non-payment by the Owner for its work on the Project. The balance of the Subcontract Sum shall be payable after the Project is completed, accepted by Owner and Architect, and the full contract price is received by Contractor from Owner.

INITIAL ACCEPTANCE OF PAGE 2 OF 9: CONTRACTOR _____ SUBCONTRACTOR _____

5.3. Subcontractor shall submit requisitions for payment to Contractor by the **twenty-fifth (25th)** of each month, based on the value of the Work performed by Subcontractor during the previous month or as provided for in the Contract Documents, so as to enable Contractor to make timely requisitions for progress payments from Owner. As a condition precedent to the payment of any requisition, Contractor may require Subcontractor to (i) produce waivers of claims and mechanic's lien rights by the Subcontractor and all persons supplying labor or materials to Subcontractor through the date of requisition and by Subcontractor, a copy of which is attached hereto and made a part of this Subcontract, (ii) furnish evidence satisfactory to Contractor that charges for such labor and material have been paid, and (iii) provide current certificates as required in Article 10 herein. Contractor reserves the right to check with Subcontractor's suppliers and subcontractors, to determine the current status of Subcontractor's indebtedness and may, at its discretion, make check payable jointly to Subcontractor and its supplier or subcontractor or withhold amounts otherwise due under this Subcontract or any other contractual arrangement between the parties and pay such amounts directly to such supplier or subcontractor for the account of Subcontractor.

5.4. Payment by Contractor to Subcontractor or for its account shall not be deemed to be an admission, approval or acceptance by Contractor of the sufficiency or correctness of the Work covered by the payment and shall not relieve the Subcontractor of its responsibility and liability for all work and materials upon which payments have been made.

### ARTICLE 6. Changes in the Work.

6.1. Contractor shall have the right, without invalidating the Subcontract and without giving notice to Subcontractor's surety, to make changes in the Work, whether by addition (the term "addition" including, but not limited to, what are commonly known as extras), deletion or both, either (a) by written agreements with Subcontractor specifying in detail the changes to be made, together with the changes in the Subcontract Sum and the time for completion of the Work by reasons thereof, or (b) by notices in writing from Contractor, specifying the changes in detail and directing Subcontractor to proceed, in which event, Subcontractor shall immediately proceed to make such changes and the Subcontract Sum shall be adjusted on the basis of Subcontractor's costs incurred or saved or both, and as allowed by Owner or Owner's authorized representative, plus a fee for overhead and profit as allowed by Owner or Owner's authorized representative. In the event of any such change calling for additional work to be done on the cost plus basis, Subcontractor shall furnish each day to Contractor, duplicate payroll sheets, material tickets, and statements, or slips for all other charges, retaining a copy of each thereof, and securing on each thereof the signature of Contractor's superintendent; such signed copies of the payroll sheets, material tickets, statements and slips shall accompany all bills and vouchers presented with requisition for payment. Contractor shall not be liable for payment for any change in the work performed by Subcontractor expressly nor shall Subcontractor perform any such changes unless it shall have been authorized by Contractor in writing. Upon notice from the Contractor, Subcontractor shall immediately and diligently proceed to perform any and all changed work and failure to do so shall constitute a material breach of the Subcontract and event of default under Article 8.

6.2. Notwithstanding any other provision of this Subcontract, where any change ordered by Contractor includes any item for which a unit price has been agreed upon, the Subcontract Sum shall be adjusted for such item based upon the unit price therefore. Provided, however, that any such adjustment shall be subject to any right of Owner reserved in the Contract Documents to renegotiate the unit prices.

6.3. Notwithstanding any other provision of this Subcontract, it is agreed that should it become necessary for Subcontractor to perform additional work for the Contractor on this Project, that is not an Owner initiated Change, such work shall be performed on a time and material basis with no mark-up for field and home office overhead or profit and with no time or compensation for field supervision (such as general superintendents, project superintendents and field foreman) unless the change directed by the Contractor specifically necessitates the hiring or assignment of additional field supervision and is authorized in writing by the Contractor before commencement of the additional work.

6.4. Subcontractor shall make all claims for changes, extensions in time, damages for delays or otherwise to Contractor in the manner provided in the Contract Documents for like claims by Contractor upon Owner, except that the time for making such claims shall be no later than five (5) days after the occurrence of the cause of such claim. The foregoing shall be in addition to any requirements in this Subcontract for earlier notification. Any such claim which will affect or become part of a claim which Contractor is required to make under the Contract Documents. Such claims shall be delivered to Contractor not less than four (4) working days preceding the time by which Contractor's claim must be made. Subcontractor expressly recognizes and agrees that failure of Subcontractor to make such a timely claim shall prejudice Contractor's ability to monitor the prosecution and costs of any asserted claim and that such failure of notice shall act as an absolute bar to recovery from the Contractor for such claims.

6.5. If Subcontractor shall make any claim against Contractor for additional compensation for a change in the Work or damages for any cause arising out of or relating to problems caused by or which are the responsibility of the Owner, Contractor shall have the right, but not the obligation, to present any such claim or claims to Owner or Owner's authorized representative for determination and decision. In so doing, its actions shall not be construed as an acknowledgment of the validity thereof, or a waiver of any right of Contractor, and such action shall be without prejudice to any and every one of its rights. A decision of Owner or Owner's authorized representative shall be final and binding upon Subcontractor to the same extent that it is final and binding on Contractor.

6.6. No additional compensation will be allowed for difficulties or inconveniences arising from mud, dust, water, ice, snow, wind, heat or cold or similar natural or physical conditions. Contractor assumes no responsibility for material received, unloaded or stored for or by Subcontractor. Materials, tools, supplies, equipment, etc., belonging or leased to Subcontractor are its responsibility and no claim for missing or stolen property shall be allowed.

### ARTICLE 7. Termination for Convenience.

7.1. Contractor shall have the right to terminate this Subcontract, without cause, or for convenience, when Contractor determines that it is in its own best interests to so terminate the Subcontract. If this Subcontract is terminated for convenience, Subcontractor shall comply with all of Contractor's termination instructions and shall be entitled to receive payment for work actually performed plus a reasonable overhead and profit for such performed work, except that if Contractor's Contract with the Owner is terminated for convenience, termination settlement and costs to Subcontractor shall be as provided in the Contract Documents, and in the amount actually received by Contractor from Owner.

INITIAL ACCEPTANCE OF PAGE 3 OF 9: CONTRACTOR    SUBCONTRACTOR _____

ARTICLE 8. Default.

8.1. Any of the following events, acts or occurrences done or suffered by Subcontractor shall constitute a material breach of any event of default under this Subcontract:

(a) If it shall become insolvent, or file or have filed against it any petition in bankruptcy, or make a general assignment for the benefit of creditors, or if a receiver shall be appointed;

(b) If it shall fail to pay, when due, for materials, supplies, labor or other items purchased or used in connection with the Work;

(c) If it shall fail to pursue the Work in accordance with this Subcontract and the progress schedules established by Contractor;

(d) If it shall fail to supply a sufficient number of properly skilled supervisors, workmen, or of materials, tools, equipment or supplies of the proper quality (including failure occasioned by strike, picketing, boycott, or other cessation of work by Subcontractor's employees);

(e) If it shall interfere with or disrupt, or threaten to interfere with or disrupt the operations of Contractor, Owner, or any other subcontractor, or other person properly on the site of the Work, or;

(f) If it shall fail to perform any other material requirement of this Subcontract;

then, in any of such event, upon five (5) days written notice, or immediately if the breach or default will, in the reasonable judgment of Contractor, significantly hinder or disrupt the work of others or jeopardize the timely completion of the Project if permitted to continue, Contractor may terminate the Subcontract, take possession of all or any materials, supplies, equipment and tools pertaining to the Work, whether on the site, in the Subcontractor's shop or in transit, and may make such arrangements for completion of the Work as it deems appropriate. The completion costs, including any other costs, damages, or expenses (such as Contractor's legal fees and expenses) incurred as a result of such default, plus an allowance for administrative burden equal to fifteen percent (15%) of such costs, shall be charged against any unpaid balance due Subcontractor; and if said costs, damage or expenses shall exceed the balance due, Subcontractor shall pay to Contractor the amount in excess upon demand of Contractor. The materials, supplies, equipment and tools taken by Contractor may be used in completing the Work and may be consumed or incorporated into the Work. With respect to any such items which are not so incorporated or consumed, or which have a salvage value, Contractor may, at its option (i) assume title thereto, or any part thereof, as of the date of default and credit the net reasonable value thereof as of the date of taking against the said completion costs, or (ii) return them to Subcontractor.

8.2. In addition to, and not in limitation of the remedies hereinabove specified, Contractor, may upon five (5) days written notice to Subcontractor, provide or arrange for the provision of, such workmen and materials as may be necessary in Contractor's opinion to continue and complete the Work for the account of Subcontractor and at Subcontractor's cost and expense, and apply to the cost thereof, plus an allowance for administrative burden equal to fifteen percent (15%) of such costs, against any and all funds which may be or become due to Subcontractor, all without terminating, rescinding or voiding this Subcontract or releasing Subcontractor from any liability hereunder.

8.3. If Contractor wrongfully exercises any option under Paragraph 8.1 and/or 8.2 above, the Subcontractor's exclusive remedy and compensation shall be as provided in Article 7 herein.

ARTICLE 9. Performance Bond and Labor and Material Payment Bond.

9.1. Upon request of Contractor made in advance of the execution of this Subcontract, Subcontractor shall furnish and pay for performance and payment bond, in an amount and with such surety as are acceptable to Contractor, before commencing any part of the Work.

9.2. If Subcontractor has not been required to furnish performance and payment bonds under Paragraph 9.1, Contractor may at any time direct Subcontractor, in writing, to provide performance and payment bonds within ten (10) days, in a form and from a surety acceptable to the Contractor, in an amount up to the then current full value of the Subcontract. Contractor will reimburse Subcontractor the amount of the bond cost. In the event that Subcontractor cannot provide such bonds, Contractor may request other security as it deems appropriate or, at its sole discretion, may terminate the Subcontract for default.

ARTICLE 10. Insurance and Indemnity.

10.1. Subcontractor shall, until the Work is completed, maintain in full force and effect, the following required insurance, in form and substance satisfactory to Contractor and Owner:

(a) Workmen's compensation insurance covering Subcontractor and all its employees at the site of the Project, having limits as required by law;

(b) Comprehensive general liability insurance, including coverage for (i) Subcontractor's contractual liability under the Subcontract; (ii) independent contractor's liability; (iii) personal injury and death; (iv) broad form property damage; (v) completed operations (remaining in effect for not less than one (1) year after all the Work has been completed and accepted by Contractor); and (vi) in case the Work consists in whole or in part of such activities as blasting work, excavating, grading, pipe line construction, pile driving, sewer construction, tunneling or welding, etc., explosion, collapse and underground damage coverage, all having minimum limits of see specification requirements Dollars ($_____) for bodily injury or death, and see specification requirements Dollars ($_____) for property damage; which limits shall be equal to or exceed the greater of those specified in the Contract Documents, those specified in the insurance carried by Contractor or as required by law; and also;

(c) Standard automotive vehicle liability insurance, including coverage for non-owned vehicles which may be used in furtherance of Subcontractor's business, having minimum limits of at least

INITIAL ACCEPTANCE OF PAGE 4 OF 9: CONTRACTOR _____ SUBCONTRACTOR _____

$500,000 for bodily injury or death to one person, $1,000,000 for death and bodily injury to all persons, and $350,000 for property damage.

10.2. All required insurance shall be with companies acceptable to Contractor, and shall not be subject to modification or cancellation during the term of the Work without sixty (60) days prior written notice to Contractor by certified or registered mail. Subcontractor shall not change or terminate said policies without the prior written consent of Contractor. As a condition precedent to its commencement of the Work, Subcontractor shall furnish Contractor with certificates of insurance specifying the Project and evidencing such insurance and/or copies of the respective insurance policies (each policy naming Contractor and Owner as additional insured there under). Subcontractor shall not allow any sub-subcontractor to commence work on the Project until insurance required by the Contract Documents has been obtained and approved, unless said insurance is covered by the Subcontractor, who is in effect, responsible to the Contractor and the Owner. This requirement extends to all tiers of subcontracting.

10.3. Subcontractor shall indemnify and save harmless Contractor, Architect and/or Owner from and against any and all claims, liens, suits, judgments, and/or damages brought, recovered or exacted against Contractor, Architect and/or Owner, including reasonable attorney's fees, for and on account of any acts or omissions of Subcontractor, including a default by Subcontractor in performing its obligations under this Subcontract, its agents, employees, associates or subcontractors.

10.4. In the event of any loss or casualty included in the Builder's Risk insurance on the Project, Subcontractor shall pay to Contractor, upon demand, an equitable share of any deductible amount based proportionately on the extent to which Subcontractor's equipment, materials, property or the Work are included in or affected by the loss or casualty.

ARTICLE 11. Execution and Progress of the Work.

11.1. Subcontractor shall not cause any hindrance, delay or disruption to Contractor or to other subcontractors on the Project and shall repair promptly and be responsible for all damage done to the Work of Contractor or other subcontractors by Subcontractor, its agents, employees, subcontractors, or suppliers. Subcontractor shall be directly responsible to Contractor or other subcontractors whose work is so damaged. Contractor shall be responsible to Subcontractor for damages if and only if such damages were directly caused by a negligent act or omission of Contractor and Subcontractor has received from Contractor written authorization before commencement of such work and all work is evidenced by time and material tickets contemporaneously prepared and signed by Contractor's on site representative.

11.2. Subcontractor shall clean up daily and remove dirt, trash and debris which may result from its employees and the performance of the Work. If Subcontractor fails to clean up and remove such dirt, trash and debris, Contractor may, at its discretion, arrange for such clean up and removal, at Subcontractor's expense.

11.3. Subcontractor shall repair and make good, free of cost to Owner and/or Contractor, and at the convenience of Owner, any damages, defects, or faults in the Project or to the premises or property of occupants of the Project that may occur during construction or during the period of one (1) year (or during a longer period if it shall be required by the Contract Documents or shall be stipulated elsewhere herein), from the later of (i) the date of completion of the Project, to the satisfaction of and acceptance by Owner and/or Owner's authorized representative, or (ii) the date of beneficial occupancy of the Project by Owner, as the result of imperfect or defective work done or materials furnished by Subcontractor.

11.4. Contractor, Owner, and their authorized representatives shall be entitled to inspect and test the Work at any and all times during its performance, and at any and all places within the Project where the Work is being performed. If any of the Work does not strictly conform to the requirements of this Subcontract, Contractor shall be entitled to (i) require that such portion of the Work be taken down and removed from the Project along with all work of other trades which must be taken down and removed in order to accomplish the taking down and removal of the Work of Subcontractor (in which event Subcontractor shall immediately do so and replace such portion of the Work, along with all work of other trades which had to be so taken down and removed, all at Subcontractor's expense) or (ii) if such removal or replacement is not practical, to allow such portion of the Work to remain in its existing condition (in which event (a) Contractor shall be entitled to backcharge Subcontractor in an amount which, in Contractor's reasonable opinion, equals the difference in value between the Work in its existing condition and the Work as required by this Subcontract, and deduct such amount from any payments due or to become due to Subcontractor, and (b) if such difference exceeds the amount of such payments, Subcontractor shall on demand pay the amount of such excess to Contractor).

11.5. In carrying out the Work, the Subcontractor shall take all necessary precautions to protect properly the work of other trades from damage caused by its operations. Subcontractor shall also be responsible to protect its work-in-progress from any damage by others subcontractors, the elements, and any other cause.

11.6. Subcontractor shall furnish periodic progress reports in a format acceptable to the Contractor on the Work including information on the status of materials and equipment under this Subcontract, which may be in the course of preparation or in manufacture. After notice from Contractor, Subcontractor shall be represented by its Project Manager, or his authorized representative approved by Contractor, at all Contractor's progress meetings. After notice from Contractor, Subcontractor shall be represented by its Project superintendent, or his authorized representative approved by Contractor, at all Contractor's weekly superintendents meetings. Contractor shall have the right to require the attendance of a representative of Subcontractor, fully authorized to act on its behalf, at any or all other meetings, whether called by Owner, Contractor, or others. Subcontractor agrees that Contractor's ability to manage the Project will be adversely impacted by its failure to attend the Project meetings, that such damage is difficult to calculate, and so to pay Contractor one hundred dollars ($100) as liquidated damages, and not as a penalty, for each and every meeting that it fails to attend.

11.7. Subcontractor shall be represented on the Project during the course of the Work by qualified, full-time supervisors acceptable to Contractor. Subcontractor shall enforce discipline and good order among its employees, suppliers, and subcontractors engaged in the Work. Contractor may require Subcontractor to remove from the Project any employees, suppliers, or subcontractors, or others employed on the Work that Contractor may deem incompetent, improper, or a hindrance to progress of any work on the Project, whereupon any such employee,

INITIAL ACCEPTANCE OF PAGE 5 OF 9:  CONTRACTOR  SUBCONTRACTOR

supplier, or subcontractor shall be so removed and shall not again be employed on any part of the Work without written consent of Contractor.

11.8. Subcontractor shall cooperate with Contractor in scheduling and performing the Work to avoid conflict or interference with the work of others. Upon written request of Subcontractor, Contractor shall provide Subcontractor with a copy of the progress schedule of the Project which Contractor has prepared, together with such additional scheduling details as will enable Subcontractor to plan and perform the Work properly. Subcontractor shall keep apprised of any changes in the progress schedule by examining the progress schedule as posted at the site of the Project.

**ARTICLE 12. Arbitration.**

12.1. AGREEMENT TO ARBITRATE. All claims, disputes and matters in question arising out of, or relating to, this Agreement or the breach thereof, in the amount of twenty thousand dollars ($20,000.00) or less, except for claims which have been waived by the making or acceptance of final payment, and the claims described in Paragraph 12.2, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect unless the parties mutually agree otherwise. Notwithstanding other provisions in the Agreement, this agreement to arbitrate shall be governed by the Federal Arbitration Act. This Agreement to Arbitrate does not apply to any claims in excess of twenty thousand dollars ($20,000.00).

12.2. EXCEPTIONS. This agreement to arbitrate shall not apply to any claim:

(a) of contribution or indemnity asserted by one party to this Agreement against the other party and arising out of an action brought in a state or federal court in arbitration by a person who is under no obligation to arbitrate the subject matter of such action with either of the parties hereto or does not consent to such arbitration; or

(b) asserted by the Subcontractor against the Contractor if the Contractor asserts said claim, either in whole or part against the Owner, or asserted by the Owner against the Contractor, when the contract between the Contractor and Owner does not provide for binding arbitration, or does so provide but the two arbitration proceedings are not consolidated, or the Contractor and Owner have not subsequently agreed to arbitrate said claim. In either case the parties hereto shall notify each other either before or after demand for arbitration is made.

In any dispute arising over the application of this Paragraph 12.2, the question of arbitrability shall be decided by the appropriate court and not by arbitration.

12.3. INITIAL DISPUTE RESOLUTION. If a dispute arises out of or relates to this Agreement, or the breach thereof, the parties may endeavor to settle the dispute first through direct discussions. If the dispute cannot be settled through direct discussions, the parties may endeavor to settle the dispute by mediation under the Construction Industry Mediation Rules of the American Arbitration Association before recourse to arbitration. Mediation will be commenced within the time limits for arbitration stipulated in the Contract Documents. Issues to be mediated are subject to the exceptions in Paragraph 12.2 for arbitration. The location of the mediation shall be the same as the location for arbitration identified in Paragraph 12.4.

12.4. NOTICE OF DEMAND. Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. The demand for arbitration shall be made as required in the Contract Documents or within a reasonable time after written notice of the claim, dispute or other matter in question has been given, but in no event shall it be made when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations, whichever shall first occur. The locations of the arbitration proceedings shall be the location of the Project.

12.5. AWARD. The award rendered by the arbitrator(s) shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction.

12.6. WORK CONTINUATION AND PAYMENT. Unless otherwise agreed in writing, the Subcontractor shall carry on the Work and maintain the Schedule of Work pending arbitration. If the Subcontractor is continuing to perform, the Contractor shall continue to make payments in accordance with this Agreement.

12.7. NO LIMITATION OF RIGHTS OR REMEDIES. Nothing in this Article shall limit any rights of remedies not expressly waived by the Subcontractor which the Subcontractor may have under lien laws or payment bonds.

12.8. SAME ARBITRATORS. To the extent not prohibited by their contracts with others, the claims and disputes of the Owner, Contractor, Subcontractor and other subcontractors involving a common question of fact or law shall be heard by the same arbitrator(s) in a single proceeding.

**ARTICLE 13. Miscellaneous.**

13.1. Subcontractor shall not sublet, assign or transfer this Subcontract or any part thereof, or the money due under it, without the written consent of Contractor; any subletting, assignment or transfer without such consent shall be void.

13.2. This Subcontract shall not become valid and effective or enforceable until (i) it has been executed by Subcontractor and returned to Contractor and Contractor has executed it, and (ii) this Subcontract and Subcontractor have been approved by Owner and/or Architect when such approval is required by Owner.

13.3. Insofar as the Work, labor, or material involved in the Subcontract are concerned, Subcontractor shall not in any instance have any greater right against or obligation to Contractor of omissions, alterations, changes or additional compensation than Contractor shall have against or to Owner therefore, where such omissions, alterations, changes or additional compensation are attributable to Owner.

13.4. Unless otherwise agreed in writing, the Subcontractor shall carry on the Work, including any changed or disputed work, and maintain progress under the Project schedule pending resolution of any dispute under this Subcontract. Failure to diligently prosecute the Work, including any changed or disputed work, shall constitute a default under Article 8 herein. If the Subcontractor continues performance of the Work, Contractor shall continue payments in accordance with the Subcontract.

INITIAL ACCEPTANCE OF PAGE 6 OF 9: CONTRACTOR _____ SUBCONTRACTOR _____

13.5. Any materials required by the Subcontract for National Defense Use are covered under DMS Regulation 1. Subcontractor shall furnish Contractor, within fourteen (14) days from the date of execution of this Subcontract, the required information concerning controlled materials on applicable Government forms.

13.6. Notice of any damage which Subcontractor alleges Contractor or other subcontractors have caused it or are causing it shall be filed by Subcontractor in writing with Contractor within five (5) days from the commencement of such alleged damage and a full accounting shall be filed by Subcontractor in writing with Contractor within five (5) days after the extent of the damage is known or the cause for the damage ceases; otherwise, Subcontractor shall not be entitled in any event to claim such damages and any such claim shall be void and of no force and effect.

13.7. If the Project is subject to Federal, State, or local regulations, Subcontractor shall comply with all requirements with regard to labor priority, maximum hours of labor, scales of wages of all skilled, semi-skilled and unskilled workmen, and the method of payment, or any other provisions of such regulations. Subcontractor shall promptly furnish any and all certificates of compliance required by applicable governing bodies and/or such regulations. Subcontractor shall be liable to Contractor and Owner for all loss, cost and expense, including reasonable attorney's fees, incurred as attributable to any act of the Subcontractor.

13.8. Subcontractor acknowledges that in arriving at the Subcontract Sum, Subcontractor considered the wage scale provided with the Specifications, and that its Subcontract Sum included any wage increases until completion and acceptance of the Work. Subcontractor also acknowledges that the Subcontract Sum includes all bid items applicable to the Work.

13.9. All shop drawings, catalog cuts, brochures, certificates (twelve copies each), samples (three each), correspondence, monthly requisitions, payrolls (original and two copies each), insurance certificates and/or policies (three copies) shall be submitted by Subcontractor to Contractor's office at 1520-A Caton Center Drive, P.O. Box 24228, Baltimore, Maryland 21227.

13.10. Subcontractor shall be fully responsible for the risk of loss of (i) any materials provided by Subcontractor as part of the Work which are stored on the Project until they are incorporated into the Project or (ii) any equipment of Subcontractor or any of its employees of subcontractors while on the Project site.

13.11. Subcontractor shall timely pay all of Subcontractor's laborers and material suppliers. Subcontractor shall indemnify and hold harmless Contractor against and from any and all mechanic's or materialmen's liens and or payment bond claims asserted or imposed against any or all of the Project and arising out of Subcontractor's failure to timely pay any such sum to any person asserting such lien or claim.

13.12. Subcontractor shall give all notices and comply with all laws, ordinances, rules, regulations and orders of any public authority bearing on the performance of the Work under the Subcontract. Subcontractor shall secure and pay for all permits and governmental fees, licenses and inspections necessary for the proper execution and completion of the Work. Subcontractor shall comply with federal, state and local tax laws, social security acts, unemployment compensation acts, and workers' or workmen's compensation acts insofar as applicable to the performance of the Subcontract.

13.13. Subcontractor shall indemnify and save harmless Contractor and Owner from any and all manner of claims or suits for infringement of patents or violation of patent rights, including all costs in connection with the same.

13.14. Subcontractor shall take all necessary safety precautions with respect to the Work, shall comply with all safety measures initiated by Contractor and with all applicable laws, ordinances, rules, regulations and orders of any public authority for the safety of persons or property and/or in accordance with the Contract Documents. Subcontractor shall report to Contractor immediately, and in no event later than three (3) days, any injury to any of Subcontractor's employees at the Project.

13.15. Contractor shall notify Subcontractor of all modifications in the General Contract which affect this Subcontract and which are issued or entered into subsequent to the execution of this Subcontract.

13.16. Subcontractor shall not engage in any discriminatory employment practice in violation of any federal, state, or local law, including any order or regulation of any agency authorized to enforce any such law.

13.17. This Subcontract shall be given effect and construed by application of the law of the State of Maryland. The parties hereto irrevocably consent to the in personam jurisdiction of the State of Maryland. Subcontractor shall not bring any legal action against Contractor in any judicial forum other than the courts of the State of Maryland, and in any venue other than the County of Baltimore. Subcontractor expressly waives its right to a jury trial for any and all disputes arising out of or related to performance of this Subcontract.

13.18. Captions and/or paragraph headings are herein used for convenience only and have no legal significance.

13.19 This Subcontract shall be binding upon and shall insure to the benefit of the parties, their heirs, legal representatives, successors and permitted assigns.

13.20. This Subcontract contains the entire agreement and understanding between the parties and there are no verbal agreements of understanding, which are not incorporated into this Subcontract. No term or provision hereof shall at any time be claimed by Subcontractor to have been waived, modified or varied by Contractor, unless any such waiver, modification or variation is evidenced in writing and signed by Contractor. The failure of Contractor to exercise any right hereunder or the waiver of any default shall not operate as a waiver of said right or as a waiver of successive defaults, but all the rights of Contractor shall continue in its favor.

13.21. Should either party employ an attorney to institute suit demand arbitration to enforce any of the provisions hereof, to protect its interest in any matter arising under this Subcontract, to collect damages for the breach of this Subcontract, or to recover on a surety bond given under this Subcontract, the prevailing party shall be entitled to recover reasonable attorney's fees, costs, charges and expenses expended or incurred therein.

INITIAL ACCEPTANCE OF PAGE 7 OF 9: CONTRACTOR  SUBCONTRACTOR

13.22. Subcontractor shall be registered to do business and otherwise licensed to perform its trade in the jurisdiction of the Project.

ARTICLE 14. The Work.

14.1. The Work is outlined as follows:

To furnish and install in accordance with the Contract Documents and all labor, material, equipment, plant, and/or services necessary to complete all __Mechanical__ work, with specific reference to Division I - General Requirements, and the following:

> To furnish and install, all plant, labor, materials, equipment, supervision, etc. necessary to complete all work. This is to be a mechanical" subcontract agreement under which Martin J. Braun Company carries responsibility for __all__ work and administrative requirements under the agreement between the Contractor and Owner. All work is to be in accordance with NAFAC Contract No. N62477-99-D-0105: Delivery Order No. 0012. All specification sections to be included.

DIVISION 00 – NAVY DOCUMENTS

Section 00101 – Bid Schedules
Section 00102 – List of Drawings
Section 00103 – Table of Contents

DIVISION 01 – GENERAL REQUIREMENTS

Section 01110 – Summary of Work
Section 01140 – Work Restrictions
Section 01200 – Price and Payment Procedures
Section 01310 – Administrative Requirements
Section 01320 – Construction Progress Documentation
Section 01330 – Submittal Procedures
Section 01420 – References
Section 01450 – Quality Control
Section 01500 – Temporary Facilities and Controls
Section 01525 – Safety Requirements
Section 01572 – Waste Management
Section 01575 – Temporary Environmental Controls
Section 01770 – Closeout Procedures

DIVISION 15 – MECHANICAL

Section 15050N – Basic Mechanical Materials and Methods
Section 15080N – Mechanical Insulation
Section 15181N – Dual Service Water Piping
Section 15950N – Testing/Adjusting/Balancing

*The work under this agreement is further defined as all work under the Contractor's agreement with the Owner.*

Subcontractor acknowledges the following:

1. Materials will not be stored on site without C.E.R., Inc.'s written approval.
2. Subcontractors will clean-up trash on a daily basis. Failure to do so may result in a backcharge by C.E.R., Inc.
3. Subcontractors must attend progress meetings if requested to do so by C.E.R., Inc.
4. Subcontractors will inform C.E.R., Inc., in writing, if a discrepancy arises between the contract drawings and specifications, in a timely manner.
5. Subcontractor will pay any safety fines assessed to C.E.R., Inc. as a direct result of a Subcontractor's failure to follow proper safety regulations.
6. Subcontractor shall execute his work in accordance with the approved CPM schedule as prepared by the Contractor, and any subsequent revisions thereof.
7. Stored materials will be paid for in accordance with the Contract requirements.
8. "Notice-to-Proceed" date is October 21, 2002. The Subcontractor shall complete all work, ready for use, within 380 calendar days following notice of award, October 14, 2003.
9. Project is wage rated and weekly certified payroll reports (3 copies) are required.

INITIAL ACCEPTANCE OF PAGE 8 OF 9:  CONTRACTOR _[signature]_  SUBCONTRACTOR _[signature]_

**ARTICLE 15. Subcontract Sum.**

15.1 If Subcontractor shall well and faithfully fulfill this Subcontract, Contractor shall pay Subcontractor the Subcontract Sum for the performance of the Work, which Subcontract Sum shall consist of the following sum or sums, which shall include all taxes, insurance premiums, charges for permits, and all other fees and charges, and which shall be firm and binding on Subcontractor: __Five Hundred Sixty Five Thousand__ Dollars ($ _565,000.00_ ).

IN WITNESS WHEREOF, the parties hereto have executed this Subcontract the day and year first above written.

CONTRACTOR:

C.E.R., Inc.

ATTEST: _[signature]_

By: _[signature]_ (SEAL)
Paul E. Rosseau, President

SUBCONTRACTOR:

MARTIN J. BRAUN COMPANY

ATTEST: _[signature]_

By: _[signature]_ (SEAL)

LAUREN S. SHIPLEY
(printed/typed name and title)
ASSISTANT PROJECT MANAGER

William J. Moran, Jr.
(printed/typed name and title)

Office Address:   3200 Annetta Avenue

Baltimore, Maryland 21213

Mailing Address: _Same as Office Address_

Phone Number:   410-732-7333

Fax Number:     410-675-2783

INITIAL ACCEPTANCE OF PAGE 9 OF 9: CONTRACTOR _[initials]_ SUBCONTRACTOR _[initials]_